## P. O. Buchanan v. John Banks and Rebecca B. Pierce, (now intermarried with N. Wilson), Appellants.

*Judgment—Confession of judgment in ejectment—Opening judgment.*

Where a judgment in ejectment has been entered under an amicable action and confession upon a warrant of attorney contained in a written contract for the purchase of land, and it appears that the entry of the judgment was without the knowledge of the defendants, and in no sense their voluntary act, a rule to open the judgment should be granted where the defendants aver failure of title to a part of the land, and that all of the purchase money, except a small balance, had been paid. In such a case a failure to aver when, where and how the purchase money was paid is immaterial where it appears that the particulars of the time and method of payment was within the knowledge of the plaintiff, and not of the defendants.

Argued May 2, 1899. Appeal, No. 355, Jan. T., 1898, by defendants, from order of C. P. McKean Co., December Term, 1894, No. 216, refusing rule to open judgment. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for rule to open judgment.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was the refusal of the rule.

*R. B. Stone,* with him *P. R. Cotter,* for appellant.—It is a well settled principle that a former judgment does not constitute a bar to subsequent proceedings for the same cause of action, unless such judgment was rendered on the merits of the case : Weigley v. Coffman, 144 Pa. 489.

*H. King,* with him *W. J. Milliken,* for appellee, cited Wilson v. Buchanan, 170 Pa. 14 ; Peterman v. Huling, 31 Pa. 432; Treftz v. Pitts et al., 74 Pa. 343.

OPINION BY MR. JUSTICE GREEN, July 19, 1899 :

The original judgment in this case was a judgment in ejectment, entered under an amicable action and confession upon a warrant of attorney contained in a written contract for the

purchase of certain oil-producing property. The judgment was entered against the defendants at the instance of the plaintiff by counsel employed by him. It was not in any sense the voluntary act of the defendants, nor had they any knowledge that it was done or about to be done, until the sheriff came to them at night with a writ of hab. fac. possessionem to eject them from the possession of the property. On the same night the defendant, Rebecca Wilson, formerly Miss Pierce, resorted to her counsel, who hastily prepared a petition to the court of common pleas asking for a rule to show cause why the judgment should not be opened and the defendants let into a defense, and for stay of execution in the mean time. This petition was presented on December 8, 1894, and on the same day the learned judge to whom the petition was presented, disposed of it in the following manner : " And now, December 8, 1894, upon reading, and considering this petition, I am of opinion that it does not show sufficient reasons for granting a rule and staying proceedings. The plaintiff specifically claims a balance due on the contract of $2,584.57. The defendant swears that it is all paid but $988.47, but does not say when, where and how it was paid. Again, she swears that the purchase money was $11,500, but the contract shows it to be $14,500. If the title is bad the defendants ought to have tendered the balance due and demanded a good title. The prayer of the petition is refused."

Now it happens that through every stage of the subsequent proceedings, every attempt made by the defendant, Mrs. Wilson, to get access to the courts and to have at least a hearing upon the merits of her contention, was defeated by the court always declaring that the judgment entered as hereinbefore stated, and disposed of by the brief ruling just mentioned, was a final and conclusive judgment, which being unappealed from and not opened, was an absolute bar to any further proceeding for relief. It was treated by the court continuously just as if it had been a judgment entered upon a verdict, after a trial before a jury, and the whole merits of the appellant's contention heard and considered by the jury, and decided against her. For, after failing to get a hearing before the judge, she next filed a bill in equity for the specific performance of the original contract. This bill was filed on January 12, 1895, just about one month

after her application to open the judgment was refused. In the bill the facts of the appellant's case were set forth much more fully and at much greater length, and they exhibited apparently a very strong case for equitable relief. But a demurrer was filed to the bill and the case was disposed of on the bill and demurrer. One of the points made in the demurrer was that there was a judgment in ejectment against the present appellant, who was the plaintiff in the bill; that a writ of possession had been issued on the judgment; that an application to open the judgment had been made and was refused, and therefore the court had no power to open or set aside that judgment. The only other points made were that the appellant admitted that she owed $988.47 of the purchase money, but had made no tender of the money, and without such tender she could not have specific performance, and, lastly, that the bill did not set forth specific facts sufficient to make out a case for specific performance, and there was an adequate remedy at law. The court sustained the demurrer, and in giving reasons for so doing made use of the defendant's affidavit in support of the demurrer and cited facts set forth in it as though they were evidence on a hearing, which of course they were not. The judge said in his opinion: " The judgment in ejectment had accomplished its purpose long before the bill was filed." (It was only about a month before.) " It is well settled that the execution of the writ for proper reasons might have been restrained in equity, but it is too late to do that after the writ has been fully executed by the sheriff and returned into court, which was the situation in this court." The learned judge seemed to forget that the appellant did apply for this very relief on the instant the judgment was entered, and before the writ was executed, and was then refused redress for reasons the sufficiency of which will be hereafter considered.

An appeal was taken from the judgment on the demurrer to this Court, but nothing was decided here except that the plaintiff in the bill having two remedies, one at law and the other in equity, chose the former and was bound by her election. Then the appellant brought the present ejectment to October term, 1895. On the trial, the learned judge, after expressing a strong desire to submit the case to the jury on the merits, if it could be done, decided that it could not be done, because

when the original judgment was entered it "is conclusive between the parties until it is opened or set aside—which was entered at No. 216, December term, 1894—that was a judgment of this Court and its effect in law, that she had not paid the purchase money; that she had violated the conditions of her agreement; that she had forfeited her rights to this property and, until that judgment is opened or set aside, we can see no possible way under the law that we can allow a verdict and enter a judgment upon it in her favor in this action. . . . Now if it is true, as she contends, that she had paid for this property, it may look like a hardship, but the remedy was to get that judgment opened or set aside, and then proceed if that was wrong." After stating to the jury that the court was "utterly unable to see how we could submit the case to you or allow a verdict for the plaintiff to stand," directed a verdict for the defendant, saying further, "We would gladly submit it to you if we could see our way to do so, but we cannot." To show the consequences which the court below attached to the original judgment, it is only necessary to quote further from the charge, to wit: "We are compelled to decide this question as we understand the law. To us the law seems to be plain. That judgment is standing there. It is an adjudication of this Court, in its effect, that she was not entitled to this property any longer; she is out of possession of it. She is asking to be allowed to recover in this suit, and asking for a judgment that she may be allowed to go into possession of it, which would be diametrically opposite to that judgment."

In consequence of this ruling, the appellant then made an application to have the original judgment opened, and this is the way in which that application was disposed of: "We can see no ground whatever for a rule to show cause why the judgment at No. 216, December term, 1894, should not be opened, and we therefore discharge such rule and dismiss the petition at the costs of Rebecca B. Wilson." From this action the present appeal is taken.

It will thus be seen that throughout all the proceedings subsequent to the order refusing, on December 8, 1894, to grant a rule to show cause why the judgment should not be opened, the fact of that judgment and the refusal to open it was interposed as a conclusive reason why there could be no relief granted of

any kind or nature, or in any kind of proceeding whatever. The result of this action of the court below is that up to this moment the appellant has never had a hearing in a court upon the merits of her case. It is idle to say that she has had such a hearing, because in the trial of the ejectment suit her witnesses and her counsel were heard. While testimony was taken, and doubtless counsel were heard in argument, all relief was refused because of the original judgment, because it was still standing and had never been opened. It was vain to contend that an application to open it had been made, and that even a rule to show cause had been refused, and therefore there had never been a hearing on the merits, or even an opportunity to have a hearing on the merits, allowed. The reply was, " There stands the judgment; your rights have been adjudged; the judgment is not opened or set aside, and you are absolutely concluded by it." While this answer would have been appropriate if, in point of fact, that judgment had been obtained in an adversary proceeding, or if a hearing had been granted on the application and the merits of the case had been really heard and decided, it must be considered that nothing of this kind had ever occurred. The judgment was not obtained in an adversary proceeding, but by the act only of the plaintiff therein as the exercise of a right under an executory contract which permitted him to cause a judgment by confession to be entered in case of a breach of the conditions of the contract. And it was alleged by the appellant in making her application to open that she had never broken the conditions of the contract, but that on the contrary the plaintiff had violated the terms of the contract in various ways, which were specified. But the court said, " We will not allow you even so much as an opportunity to prove that you have not broken the conditions of the contract, and therefore we deny you a rule to show cause." And so it has come to pass that a litigant, with an undoubted right to be heard concerning her grievances, has been denied all hearing; she has never yet been heard; worse than all else, she has in all the proceedings subsequent to the first been denied a hearing, for the very reason that she had already been denied a hearing in the first proceeding. This, certainly, is a state of things that ought not to exist, and which cannot be allowed to exist without being a dire reproach to the administration of justice. We do not think that

any such alternative is necessary in this case. The learned court below having refused all relief, because of its action upon the first application of the appellant, let us inquire into the nature and character of that proceeding, and thus determine the legal correctness of its result.

The judgment that was entered by the confession of the attorneys of the plaintiff, and at his instance, was entered upon a warrant of attorney which was part of a contract for the sale of oil properties by the plaintiff to John Banks and Rebecca B. Pierce, now Wilson. The contract is in writing, dated May 4, 1885, and recited that in consideration of the payment of $3,000 paid to him by the second parties to the contract, and the further consideration of $11,500 to be paid as thereinafter stated, the party of the first part, P. O. Buchanan, thereby sold, assigned and transferred unto the second parties the oil or mineral right to each one of three tracts of land in Bradford township, McKean county, Pa., one containing sixteen acres, another containing twenty-one and seven tenths acres, and the third containing five acres; and also five oil wells with engines, boilers, carpenter rigs, tubing, casing and fixtures situated on the tracts. The parties of the second part were to operate the wells, and the $11,500 consideration money was to be paid by running to the credit of the first party in the lines of the Tide Water Pipe Company the oil produced from the well until the whole amount of $11,500 was paid. Some minor conditions were added, and a provision that until the money was paid the title should remain in the first party, and when it was all paid the first party was to execute a good conveyance of all the interests described to the second parties, free of all incumbrances. A further stipulation was added, that a breach of any of the conditions by the second parties should work a forfeiture of all moneys paid and of all interest in the land. The contract closes with a provision authorizing any attorney of McKean county, upon breach of any of the conditions of the contract, to appear for the second parties and confess judgment in an action of ejectment for the premises, and to issue a writ of habere facias possessionem, with clause of fi. fa. for costs and an attorney's fee of $50.00.

Under this contract the second parties paid the $3,000 down money, took possession of the premises and run the wells, the

oil being run to the credit of Buchanan into the lines of the Tide Water Pipe Company, according to the contract. In 1887 a dispute arose between the parties in consequence of allegations by the second parties that the first party had made misrepresentations to them as to the condition of the wells when he sold them, and that they found them obstructed with irons that had been permitted to fall into them and had not been taken out, and that they were put to much expense in removing them, and also that the first party had not sold the oil that was run into the pipe lines each month as he had agreed to do. Finally, the parties agreed upon a settlement of these disputes upon Buchanan paying to them $667.50 for the damage sustained on account of the condition of the wells, and advancing $635 to them and transferring to their credit one eighth of the oil then run to his credit in the lines. And it was further agreed that when Buchanan had received from seven eighths of the oil run to his credit the remainder of the purchase money and the $635, he should make title to the wells according to the agreement. After this, the oil was continued to be run into the pipe lines until in 1889 the second parties discovered, so they alleged, that Buchanan had no title to the five acre tract, and they called his attention to it and he refused to make them any further title than was furnished by the agreement. They then discontinued running any more oil to his credit, claiming that they had paid him all they owed him and that upon a settlement of the accounts he was indebted to them. After this they continued to take the oil without interruption from Buchanan, or any claim on his part, until December, 1894, when he caused the judgment in ejectment to be entered. In the mean time, in 1893, Mrs. Wilson bought out all the interests of Mr. Banks in the premises and thereafter conducted the operations herself.

Immediately after the entering of the judgment by confession and the issuing of the writ of possession, Mrs. Wilson applied to her counsel, who prepared a hasty petition for a rule to show cause why the judgment should not be opened, the execution to be staid in the mean time, and presented it to Judge MORRISON on the next day, who refused to grant a rule on the same day and in the manner heretofore stated. The petition set forth briefly the making of the agreement, the stipulation for a conveyance of the title when the $11,500 was paid, that one of

properties, the one containing five acres, was still producing oil in paying quantities, but that she had discovered that Buchanan had no title to it; that all of the $11,500 had been paid except a balance of $988.47, which she was ready to pay when Buchanan would make a conveyance of the property to her, but that he could not make such a conveyance because he had no title to that lot. She further set forth that Buchanan had caused the judgment to be entered and the writ to be issued, and asked for a rule to show cause why the judgment should not be opened, and she be allowed to defend and that the writ of possession should be staid in the mean time. The judge on the same day filed the short opinion heretofore copied, refusing the rule for the following reasons : " The plaintiff specifically claims a balance due on the contract of $2,584.57. The defendant swears that it is all paid but $988.47, but does not say when, where and how it was paid. Again she swears that the purchase money was $11,500 but the contract shows it to be $14,500. If the title is bad the defendants ought to have tendered the balance due and demanded a good title."

We are obliged to say that we consider these reasons entirely insufficient to justify the court in refusing to grant the rule to show cause and to stay the writ. As to the first of them, that she does not say when, where and how the money was paid, it will be perceived that she swears that the purchase price of $11,500 was all paid according to the terms of the contract except the balance of $988.47. The contract required that it should be paid by the oil being run into the Tide Water Company's lines to the credit of the grantor, Buchanan, who was to make sales of the same every month. It was Buchanan's business therefore to make the sales and keep the account of them. The defendant had no control over the oil after it was run into the pipe lines. It was run there to his credit and he alone had the right to control it. While the defendant could easily know the general fact that the oil had been run into the pipe lines until there was enough to pay all of the purchase money except a certain amount, she could not be expected to furnish a detailed statement of each month's sales, nor to whom the sales were made, nor for what prices. Those were facts which rested in the knowledge peculiarly of the plaintiff, and all of the particulars would come out when evidence was taken on the hear-

ing. It was quite enough for her to say under oath that it was all paid but a certain balance, in order to obtain the rule. The details of " when, where and how it was paid " could not possibly be stated by her as she had no control over those particulars. The second reason for refusing the rule is so very trifling that it is a matter of wonder it was considered. It is thus stated in the opinion, " Again she swears that the purchase money was $11,500, but the contract shows it to be $14,500." Even if she had made a mistake it was no reason for refusing the rule. But the fact is that the contract itself states that the $3,000 had already been paid at the execution of the contract and the only money to be thereafter paid was the $11,500, and that was the sum that was to be paid by running the oil into pipes to the credit of the plaintiff. In the hurry of drawing the petition it can readily be understood how it occurred that no mention was made of the $3,000 down money. It was only the other part, the $11,500, that was to be paid after the contract was signed. Literally, the $11,500, therefore, was the only purchase money that was to be paid after the contract was signed. The last reason given for refusing the rule was no better than either of the others, to wit: that " if the title was bad the defendants ought to have tendered the balance and demanded a good deed." What had that to do with the question before the court? That question was whether a rule should be granted to show cause why the judgment should not be opened and the defendant allowed to defend, that is, to show by proof that the facts she had alleged were true and the judgment was therefore wrongfully entered. She certainly had a right to have an opportunity to show such a state of facts as would invalidate the one-sided judgment which the plaintiff was claiming he had a right to enter for her. If he had no title to one of the lots it might, and probably would, constitute a legal reason why she should not be required to pay this small additional amount of the purchase money, and if it did, she was in no default for not paying it, and hence had not violated the conditions of the contract in this respect. As the right to enter the judgment by confession at all, depended upon her having violated the condition of the contract, she certainly had a right to show any reasonable excuse for not having paid money which she might not be legally bound to pay. There was no question

involved here, and at this stage of the proceedings, as to the acquisition of title to the lands and rights in question by the defendant. The very temporary and primal and, as it turned out afterwards, the most important, question then developed was whether she had a right to be heard in the courts when she certainly did have a cause that required a hearing. It is one thing to decide against a litigant, but it is a very different, and far more important, thing to decide that a litigant shall not be heard at all. This particular litigant was so situated that she had but one thing she could do. A judgment was entered against her, not by her own act, but by the act of her adversary under an assumed contract right to do so. She must get rid of that judgment in order to assert her rights and have them actually tried. She attempted to get this opportunity in the only way it could be done, by asking to have the judgment opened, and she was not allowed to have even the opportunity to be heard. And because she was denied this opportunity in the beginning, she was denied it all the way through the subsequent proceedings. This was the radical error of the case, and when it was repeated on the last application to open the judgment, she had a just cause of appeal to this court. When this judgment has been opened, and she has been allowed to be heard on the merits of her case, if it is then decided that the merits are against her, she at least cannot complain that the doors of the temple of justice have been closed against her. We cannot now deal with the several assignments of error, because they involve matters of detail which can only be considered after the rule to show cause has been granted and testimony heard upon the merits of the case, unfettered by any previous decision. It was error to refuse the rule to show cause when it was first asked for, and the error was repeated when the application for the rule was last made. We sustain the eighth and ninth assignments of error, because they raise the very question of the refusal to grant the rule. As to the others we say nothing, because they involve the merits which are not now before us.

The orders refusing the rules to show cause why the judgment should not be opened and the defendant allowed to defend are now reversed at the cost of the appellee, and the rule to open is now granted, and the record is remitted for further proceedings.